## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEPHANIE MOYER, as** | : | |
| **ADMINISTRATOR of the ESTATE OF** | : | |
| **VICTORIA JEANNETTE HERR,** | : | |
| | : | **No. 16-cv-_____** |
| **Plaintiff,** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **v.** | : | |
| | : | |
| **LEBANON COUNTY; JEFFREY** | : | |
| **YOCUM, DO; A. McHALE, LPN;** | : | |
| **HEATHER PHIPPS, LPN; MEDICAL** | : | |
| **JOHN DOES 1-10; WARDEN ROBERT** | : | |
| **KARNES; CORRECTIONAL OFFICER** | : | |
| **MICHAEL GERSTNER;** | : | |
| **CORRECTIONAL OFFICER** | : | |
| **CHEYENNE GETTLE;** | : | |
| **CORRECTIONAL OFFICER** | : | |
| **CRYSTAL HERR; CORRECTIONAL** | : | |
| **OFFICER BRADLEY KRALL;** | : | |
| **CORRECTIONAL OFFICER SARAH** | : | |
| **SMITH; CORRECTIONAL OFFICER** | : | |
| **JOHN DOES 1-10,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## COMPLAINT

## I.  PRELIMINARY STATEMENT

1.     Defendant Lebanon County, as the administrator of the Lebanon

County Correctional Facility ("LCCF"), and the defendant medical and

correctional staff who work at LCCF, are aware that large numbers of inmates

admitted to that facility suffer from drug addiction, including, in particular, heroin

1

addiction, and suffer from detoxification at the time of their admission.  They are aware that such detoxification can lead to serious illnesses and, without treatment, death.  And they are aware that they are responsible for ensuring that timely and adequate medical intervention is provided to inmates experiencing detoxification.

2.      Despite this awareness, when Victoria Jeannette Herr ("Ms. Herr") was admitted to LCCF on March 27, 2015, defendants utterly ignored their responsibilities to ensure her wellbeing.  Ms. Herr, a recent high school graduate who had never been arrested before, told the defendants she was addicted to heroin and that she expected to go through detoxification.  Over the next four days, however, defendants stood by as Ms. Herr showed obvious and alarming signs that her detoxification was causing serious medical consequences.  She vomited repeatedly and had uncontrolled diarrhea.  She was unable to eat or retain fluids.  She was disoriented and in an obviously altered state of consciousness.  Yet, defendants did nothing to provide her with critically needed treatment.

3.      On the evening of March 31, 2015, Ms. Herr, weak from dehydration, collapsed on the floor of her housing unit, lost consciousness, and went into cardiac arrest.  Finally, emergency services were called, and emergency responders transported her to a hospital.  Her condition, however, was irreversible, and she never regained consciousness.  Five days later, on April 5, 2015, she died.  She was 18 years old.

4.     In light of the defendants' extraordinary misconduct, Plaintiff Stephanie Moyer, Ms. Herr's mother and the administrator of Ms. Herr's estate, brings this civil rights survival and wrongful death action pleading federal constitutional claims under 42 U.S.C. § 1983 and supplemental state-law claims. She seeks on behalf of Ms. Herr's estate and heirs substantial damages for the loss of Ms. Herr's life and her enjoyment of that life, and the extreme pain and suffering and financial losses caused by the defendants' actions and inactions.

## II.  JURISDICTION

5.     This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367(a).

## III.  PARTIES

6.     Decedent Victoria Jeannette Herr was at all times relevant to this Complaint a resident of Lebanon, Pennsylvania.  She died at the age of 18 on April 5, 2015.

7.     Plaintiff Stephanie Moyer, the mother of Ms. Herr, was on August 13, 2015, appointed as the Administrator of the Estate of Victoria Jeannette Herr by the Lebanon County Register of Wills.  She brings this action in her capacity as Administrator of the Estate and for the benefit of Ms. Herr's heirs.

8.     Defendant Lebanon County is a municipal government entity in the Commonwealth of Pennsylvania, which manages and oversees the LCCF in Lebanon, Pennsylvania.

9.     At all times relevant to this Complaint, Defendant Jeffrey Yocum, DO, was a physician working as an independent contractor and/or an employee of Defendant Lebanon County and assigned to provide medical care for inmates at LCCF.  Defendant Dr. Yocum was the medical director at LCCF with supervisory authority over all clinical staff and was the final policymaker for Defendant Lebanon County with regard to all medical matters for prisoners at LCCF.

10.     At all times relevant to this Complaint, Defendant A. McHale, LPN, was a nurse working as an independent contractor and/or an employee of Defendant Lebanon County and assigned to provide medical care for inmates at LCCF.

11.     At all times relevant to this Complaint, Defendant Heather Phipps, LPN, was a nurse working as an independent contractor and/or an employee of Defendant Lebanon County and assigned to provide medical care for inmates at LCCF.

12.     At all times relevant to this Complaint, Defendant Medical John Does 1-10, were medical professionals working as independent contractors and/or employees of Defendant Lebanon County and assigned to provide medical care for

inmates at LCCF. Plaintiff does not presently know the names of these defendants but will seek leave to amend the Complaint so as to name each appropriate defendant after the completion of additional discovery.

13.    At all times relevant to this Complaint, Defendant Warden Robert Karnes was employed by Defendant Lebanon County as the Warden of LCCF. Defendant Warden Karnes was the final policymaker for Defendant Lebanon County with regard to all correctional matters at LCCF.

14.    At all times relevant to this Complaint, Defendant Correctional Officer Michael Gerstner was employed by Defendant Lebanon County as a correctional officer at LCCF.

15.    At all times relevant to this Complaint, Defendant Correctional Officer Cheyenne Gettle was employed by Defendant Lebanon County as a correctional officer at LCCF.

16.    At all times relevant to this Complaint, Defendant Correctional Officer Crystal Herr was employed by Defendant Lebanon County as a correctional officer at LCCF.

17.    At all times relevant to this Complaint, Defendant Correctional Officer Bradley Krall was employed by Defendant Lebanon County as a correctional officer at LCCF.

18.    At all times relevant to this Complaint, Defendant Correctional Officer Sarah Smith was employed by Defendant Lebanon County as a correctional officer at LCCF.

19.    At all times relevant to this Complaint, Defendant Correctional Officer John Does 1-10, were correctional employees employed by Defendant Lebanon County at LCCF.  Plaintiff does not presently know the names of these defendants but will seek leave to amend the Complaint so as to name each appropriate defendant after the completion of additional discovery

20.    At all times relevant to this Complaint, all defendants acted under color of state law.

21.    At all times relevant to this Complaint, all defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to Ms. Herr.

### IV.  FACTUAL ALLEGATIONS

#### A.  Correctional Professionals' Knowledge
#### Of The Serious Risks Of Heroin Detoxification

22.    In the years and months before Ms. Herr's March 2015 admission to LCCF, the abuse of heroin and other opiate-based controlled substances increased dramatically throughout the nation and, in particular, in Lebanon County and the surrounding areas.

23.     During that time period, patterns of heroin and opiate abuse showed significant increases among young women of the same demographic background as Ms. Herr.

24.     Reasonably trained correctional policymakers and officers and reasonably trained practitioners of correctional healthcare were aware of these patterns of increased abuse of heroin and other opiate-based controlled substances.

25.     Reasonably trained correctional policymakers and officers and reasonably trained practitioners of correctional healthcare were particularly attuned to patterns of heroin and opiate abuse due to the disproportionately high number of heroin and opiate abusers typically present in a correctional population.

26.     Reasonably trained correctional policymakers and officers and reasonably trained practitioners of correctional healthcare were, likewise, aware of the significant medical issues presented in heroin users detoxifying from heroin due to sudden termination of their usage upon admission to a correctional facility.

27.     Defendant Yocum in particular was acutely aware of the increased pattern of heroin and opiate use in the community in general, and especially among persons admitted to the correctional facility, given his position as medical director of LCCF as well as his position as Lebanon County Coroner and as a reported expert in addiction medicine.  As Defendant Yocum stated in public comments,

heroin and opiate related deaths in Lebanon County increased dramatically in the years and months before Ms. Herr's admission to LCCF.

28.    Although detoxification for heroin users who are otherwise healthy is not usually dangerous when it takes place with proper monitoring and treatment, detoxification is known to have several harmful and potentially fatal medical consequences, and, as such, inmates experiencing heroin detoxification have serious medical needs.

29.    Such dangerous medical consequences are particularly likely to be present in persons who are heavy users of heroin.

30.    The serious medical consequences present with heroin detoxification include dehydration, electrolyte imbalance, neurological arrhythmia (seizures) or cardiac arrhythmias leading to sudden cardiac arrest.

31.    For these reasons, basic recognized standards of correctional healthcare require that persons who are admitted to correctional facilities with obvious signs of heroin or other opiate abuse be consistently monitored.

32.    Such monitoring must include assessments multiple times per day of vital signs, including pulse, respirations, blood pressure and body temperature.

33.    Such monitoring must also include evaluation multiple times per day of symptoms which are consistent with serious health consequences of detoxification, such as vomiting, diarrhea, anxiety, sweating, and restlessness.

34.     Monitoring, assessment and evaluation of this nature is necessary to ensure that an inmate experiencing heroin detoxification is not at risk for more serious medical consequences, including those outlined above.

35.     Defendant Lebanon County, as an entity that operates a correctional facility and is charged with the responsibility to provide medical care to an inmate population, was aware of the medical issues presented in an inmate population and was thus aware of the need for monitoring, assessment and evaluation of persons admitted to correctional facilities with histories of heroin or other opiate abuse.

36.     Defendant Lebanon County was aware of the need to establish and follow specific policies, practices and guidelines for its contractors and/or employees regarding care for inmates with histories of heroin or other opiate abuse.

37.     Defendant Lebanon County was, likewise, aware of the need to supervise, train, and discipline its contractors and/or employees concerning compliance with established policies, practices and guidelines for its contractors and/or employees, including those policies, practices and guidelines regarding care for inmates with histories of heroin or other opiate abuse.

38.     The medical and correctional contractors and/or employees of LCCF were aware of the need to monitor persons admitted to LCCF with histories of

9

heroin or other opiate abuse and the need to provide necessary medical

intervention in the event of complications arising from heroin detoxification.

### B.  Ms. Herr's Admission To LCCF
### And Rapid Decline Due To Heroin Detoxification

39.     Throughout her childhood, Ms. Herr was a successful student.  She

had many friends and was an exceptionally talented artist.

40.     In her late teens, Ms. Herr began to experience symptoms of anxiety.

Various methods to treat her condition were not successful, and, to ease her

symptoms, Ms. Herr began to use controlled substances.

41.     As she approached her high school graduation, her use of prescription

drugs developed into an addiction to opiate-based medications.

42.     As is common among opiate users, Ms. Herr began using heroin

instead of prescription medications due to the substantially lower cost of heroin

and the ease of locating the drug.

43.     By the time Ms. Herr graduated from high school in June 2014, she

was addicted to heroin and using it on a daily basis.

44.     Following her graduation, Ms. Herr moved in with her boyfriend, who

was also addicted to heroin.

45.     In late March 2015, law enforcement officers in Lebanon County

were searching for Ms. Herr's boyfriend due to an outstanding warrant for his

failure to appear at a court date.

46.     Law enforcement officers contacted Plaintiff Stephanie Moyer and her husband to ask if they knew where Ms. Herr's boyfriend could be found.

47.     Ms. Moyer and her husband provided the address for Ms. Herr and her boyfriend.  When they gave the address to law enforcement officers they knew there was a chance Ms. Herr could get arrested, but they believed that she would be safe.

48.     On March 27, 2015, law enforcement officers went to the apartment shared by Ms. Herr and her boyfriend in order to execute the arrest warrant.

49.     Upon entering the apartment, the officers discovered heroin and related drug paraphernalia.  Because Ms. Herr was present in the apartment, she was placed under arrest and charged with controlled substance offenses.

50.     Following her arrest, Ms. Herr was taken to LCCF and was admitted to the facility on the afternoon of March 27, 2015.

51.     Shortly after her arrival at the facility, Ms. Herr met with Defendant Correctional Officer Gerstner who, among other things, conducted an intake interview with Ms. Herr.  Defendant Gerstner noted in a report of the interview that Ms. Herr was using up to ten bags of heroin every day and stated that she should be placed on thirty-minute "checks" for withdrawal.

52.     Defendant Gerstner and all other LCCF personnel thus knew by the afternoon of March 27, 2015 that Ms. Herr was likely to experience symptoms of detoxification from heroin.

53.     On the morning of March 28, 2015, Ms. Herr saw Defendant Medical John Doe 1 for a medical examination.  Based on Ms. Herr's self-report and other information in her medical chart, including Defendant Gerstner's notation, Defendant Medical John Doe 1 was aware that Ms. Herr was a heavy user of heroin, injecting at least 10 bags of heroin every day.

54.     Ms. Herr reported to Defendant Medical John Doe 1 that she had started to experience symptoms of withdrawal due to heroin detoxification.

55.     Based on this information, Defendant Medical John Doe 1 knew that Ms. Herr had serious medical needs.

56.     Notwithstanding Ms. Herr's report of detoxification, Defendant Medical John Doe 1 conducted no examination of Ms. Herr.  He/she did not assess Ms. Herr's vital signs (e.g., pulse, respirations, blood pressure), nor did he/she conduct any evaluation for important symptoms of serious medical consequences (e.g., nausea, vomiting, diarrhea, anxiety).

57.     As the LCCF medical director, Defendant Dr. Yocum was made aware of Ms. Herr's admission to the facility, her history of prolonged and heavy

heroin abuse, and her report of experiencing detoxification.  He was, therefore, aware that Ms. Herr had serious medical needs.

58.    Notwithstanding his knowledge of her serious medical needs, Defendant Dr. Yocum made no effort to conduct an examination of Ms. Herr or to assess her vital signs.  Nor did he direct that other medical professionals at LCCF examine Ms. Herr or assess her vital signs.

59.    Medical Defendant John Doe 1 ordered that Ms. Herr be placed on a "withdrawal protocol."  Such a protocol necessarily requires, consistent with basic and recognized standards of correctional health care, examination of a person experiencing heroin detoxification multiple times per day for purposes of assessing vital signs and evaluating potential symptoms of serious health consequences.

60.    Medical Defendant John Doe 1 and Defendant Dr. Yocum, however, made no effort and took no action to ensure that such examinations and assessments would occur, knowing that their failure to do so would result in Ms. Herr receiving no medical attention while experiencing heroin detoxification

61.    Between the morning of March 28, 2015 and the evening of March 31, 2015, Ms. Herr received no medical attention. No medical professional examined her, nor did any medical professional assess her vital signs.

62.    During that four-day period, Ms. Herr's unmonitored heroin detoxification caused a rapid and severe decline in her health.

63.     Within a day of her March 28, 2015 medical encounter with Medical John Doe 1, Ms. Herr was experiencing repeated bouts of vomiting and near constant diarrhea.

64.     Her vomiting and diarrhea led to unsanitary conditions in her cell, and inmates assigned to a work detail were summoned by correctional staff to clean her cell several times a day.

65.     Due to her uncontrolled diarrhea, correctional staff forced Ms. Herr to wear adult diapers.

66.     Ms. Herr did not eat and ingested only limited fluids.

67.     Ms. Herr became delirious and was detached from reality.  She hallucinated and told other inmates about her hallucinations as if they were real.

68.     Ms. Herr was also exhibiting signs of extreme weakness and altered consciousness; she appeared dazed and disoriented and could not stand, walk or sit up unassisted.

69.     Ms. Herr's vomiting, diarrhea and altered state of consciousness were all signs of severe dehydration with potentially critical consequences.

70.     Inmates housed in the same area as Ms. Herr were aware that she was experiencing obvious and serious medical consequences as a result of her heroin detoxification as described above. They communicated those problems to

14

correctional and medical staff and urged correctional and medical staff to provide medical intervention for Ms. Herr.

71.     Defendant Correctional Officers Gerstner, Gettle, Herr, Krall, Smith and Does 1-10, were, as a result of their interactions with Ms. Herr and/or interactions with other correctional staff who interacted with Ms. Herr, all aware of Ms. Herr's serious medical needs evidenced by her vomiting, diarrhea, altered consciousness, weakness, and inability to eat or drink.

72.     Upon information and belief, Defendant Warden Karnes, as the supervisor of all correctional matters at LCCF, was aware of Mr. Herr's serious medical needs and the fact that correctional and medical staff did not address those serious medical needs.

73.     Notwithstanding this knowledge and their understanding that these symptoms could lead to severe health consequences including death, Defendants Karnes, Gerstner, Gettle, Herr, Krall, Smith and Correctional Officer Does 1-10 failed over a period of several days to take any action to ensure that Ms. Herr would receive medical attention.

74.     Defendants Yocum, McHale, Phipps and Medical John Does 1-10 were, likewise, all aware of Ms. Herr's serious medical needs as they learned that she was experiencing vomiting and diarrhea, that she was showing signs of altered consciousness, and that she was not eating or drinking.

15

75.     Notwithstanding this knowledge and their understanding that these symptoms could lead to severe health consequences including death, these defendants failed over a period of several days to take any action to provide Ms. Herr with medical attention as she was never taken to the medical unit of LCCF.

76.     Alternatively, if Ms. Herr was taken to the medical unit of LCCF, the medical staff, including Defendants Yocum, McHale, Phipps and Medical John Does 1-10 failed, notwithstanding their knowledge of Ms. Herr's severe and potentially life-threatening symptoms, to provide any medical intervention to address her serious medical needs.

77.     On March 30, 2015, Ms. Herr phoned her mother, Plaintiff Stephanie Moyer, from LCCF. Ms. Herr alarmingly told Ms. Moyer that she felt like she was dying, and that she was thirsty and wanted lemonade.  This phone call left Ms. Moyer extremely worried about her daughter's well being.

78.     Later that day Ms. Moyer went to LCCF with her husband to try to visit Ms. Herr. There, they spoke with a correctional officer who would not allow them to visit Ms. Herr.  At Ms. Moyer's insistence, the officer called another staff member in the facility who had purportedly interacted with Ms. Herr.

79.     According to the officer, the staff member who had purportedly interacted with Ms. Herr reported that she was "fine."

80.    The statement that Ms. Herr was "fine" was false. The employee who made that statement, who is upon information and belief one of the Defendant medical employees, knew that Ms. Herr was far from "fine," because, by the time of this statement, Ms. Herr had been experiencing persistent vomiting and diarrhea and had become progressively weaker and less coherent as her dehydration became more severe.

81.    The assurance that Ms. Herr was "fine" gave Ms. Moyer and her husband false confidence that they could trust correctional and medical staff to properly and adequately address their daughter's medical needs.

82.    By the next evening, March 31, 2015, Ms. Herr was barely conscious.

83.    Correctional staff, including Defendant Correctional Officers Gettle and Smith, finally went to Ms. Herr's cell to escort her to the medical unit.

84.    When ordered by Defendants Gettle and Smith to exit her cell, Ms. Herr could not walk on her own power and fell to the floor.

85.    Defendants Gettle and Smith roughly picked her up to a standing position and, while holding her upright, escorted her to the medical unit.

86.    While doing so, Defendants Gettle and Smith, yelled at Ms. Herr, ordering her to walk faster and accusing her of faking her condition.

87.     Upon arrival at the medical unit, Ms. Herr encountered Defendant Correctional Officer Krall.  He too yelled at Ms. Herr and accused her of faking her condition.

88.     In the medical unit, Ms. Herr was seen by Defendants Nurse McHale and Nurse Phipps.  These defendants were aware from Ms. Herr's obvious signs of severe dehydration and other symptoms that she was experiencing a life-threatening medical emergency.

89.     Notwithstanding their awareness of this fact, neither Defendant Nurse McHale nor Defendant Nurse Phipps conducted an examination of Ms. Herr, nor did they make any effort to provide her with emergency treatment.

90.     Defendant Dr. Yocum was informed of Ms. Herr's condition and, accordingly, learned both that she was showing obvious signs of dehydration and that she had not been provided with any medical examination or treatment.

91.     Despite this knowledge and his understanding that Ms. Herr was experiencing a life-threatening medical emergency, Defendant Dr. Yocum made no effort to conduct an examination of Ms. Herr, to ensure that other medical professionals would conduct an examination of Ms. Herr, or to provide her with adequate treatment for her serious condition.

92.     During her encounter with Defendant Nurse McHale and Defendant Nurse Phipps, Ms. Herr was provided with Ensure (a nutritional supplement) and a cup of water.

93.     Given Ms. Herr's obvious life threatening condition, Defendant Nurse McHale and Defendant Nurse Phipps knew that merely providing Ms. Herr with Ensure and a cup of water was not adequate to address her serious medical needs.

94.     Defendant Correctional Officers Gettle and Smith returned Ms. Herr to her housing area.

95.     Upon arrival at her cell, Ms. Herr collapsed.  As she fell to the floor she began vomiting large quantities of liquid.  She emitted a gasping sound, stopped breathing and had no pulse.

96.     Correctional staff, including Defendant Correctional Officers Gettle, Herr and Krall, observed Ms. Herr fall to the ground and were aware that she was experiencing a life-threatening medical emergency requiring immediate life-saving measures.

97.     Despite the fact that Ms. Herr was not breathing and had no pulse, correctional staff, including the above-referenced defendants, inexplicably failed to conduct CPR and/or conduct other life-saving measures.

98.    Inmates in the housing area yelled to the correctional officers that they knew how to conduct CPR and could assist in life-saving measures, but the officers refused to allow these inmates to approach Ms. Herr.

99.    Due to the failure to engage in life-saving measures, Ms. Herr remained without a pulse and without respirations for several critical minutes.

100.    Medical staff were summoned to the housing area and an ambulance was called.

101.    Efforts at resuscitation were finally begun and Ms. Herr was removed from LCCF and taken to an ambulance.  After prolonged efforts, while en route to a local hospital, Ms. Herr's heart rhythm and respirations were revived.

102.    However, because she had undergone a lengthy period of time without oxygen, Ms. Herr's brain was severely damaged, and she did not regain consciousness.

103.    After evaluation at a local hospital, physicians quickly determined that Ms. Herr required treatment in an intensive care unit.  Shortly after her admission, Ms. Herr was airlifted to the Lehigh Valley Hospital Trauma Center.

104.    At Lehigh Valley, Ms. Herr was admitted to the Intensive Care Unit.

105.    On the evening of March 31, 2015, Plaintiff Stephanie Moyer, having been falsely told the previous day that Ms. Herr was "fine," and believing that her daughter was safe, turned off her cell phone when she went to sleep.

106.   Defendant Warden Karnes called Ms. Moyer on her cell phone after 11:00 pm on March 31 to inform Ms. Moyer of her daughter's hospitalization. Because Ms. Moyer had turned off her cell phone, she did not receive the telephone call.  Defendant Warden Karnes left a message for Ms. Moyer stating Ms. Herr was in critical condition.

107.   Ms. Moyer did not receive the message until after 6:00 am on April 1.

108.   By that time, Ms. Herr was on a ventilator in the Intensive Care Unit at the Lehigh Valley Hospital Trauma Center.

109.   After placement on a ventilator, Ms. Herr could not be revived.  On April 5, 2015, after five days in intensive care, she died.

110.   In the days after Ms. Herr's hospitalization and eventual death, correctional and medical staff engaged in efforts to conceal and cover up the wrongdoing that led to Ms. Herr's death.

111.   After Ms. Herr's hospitalization, Ms. Moyer contacted Defendant Warden Karnes to ask what had led to her daughter's critical illness.

112.   Defendant Warden Karnes advised Ms. Moyer that all appropriate protocols had been followed in the treatment of Ms. Herr.  This statement was false as recognized measures to ensure the health and safety of prisoners experiencing heroin detoxification were ignored during the entire period of Ms. Herr's incarceration.  Defendant Karnes' statement to Ms. Moyer was, therefore, an

intentional effort to cover up the failures of LCCF staff to care for Ms. Herr or, alternatively, a deliberate effort to ignore those failures.

113.   Additionally, on April 1, 2015, Defendant Nurse Phipps placed a "late entry" in Ms. Herr's medical chart stating that on March 31, 2015, moments before she collapsed and lost consciousness, Ms. Herr had been able to speak with staff and make eye contact when prompted, and that she was able to take pills and drink Ensure without difficulty.

114.   This statement, intended to give the impression that Ms. Herr was not gravely ill on the evening of March 31, was false. Given her condition, Ms. Herr could not have interacted with staff and taken medications on her own power.

115.   Further, after Ms. Herr's death, when investigators from the Lehigh County Coroner's Office sought to investigate the circumstances of the death, staff members at LCCF refused to provide information responsive to investigators' requests.

116.   As a result of this conduct, investigators were prevented from timely learning about the inadequate care provided for Ms. Herr's serious medical needs.

117.   Likewise, despite recognized requirements that correctional and medical staff must conduct a "mortality review" regarding the death of any inmate who dies while under the supervision of the correctional facility, LCCF's

correctional and medical staff, with the approval of Defendant Dr. Yocum and

Defendant Warden Karnes, conducted no such review regarding Ms. Herr's death.

118.   Due to the failure to conduct the required review, medical and

correctional staff failed to account for the actions which caused Ms. Herr's death

and measures that could be taken to prevent similar occurrences in the future.

119.   Finally, even though the defendants in this matter were aware that Ms.

Herr's death was caused by their conduct, they made public statements blaming

Ms. Herr for her own death.  In particular, Defendant Gerstner posted in a social

media group established to commemorate Ms. Herr's life and mourn her death: "I

find this so funny that people want the tax payers to pay for people going through

withdraw in prisons…So, I say let them do there [*sic*] 'hard' withdraw and spend

the money on someone that is gonna appreciate it!!!!  You do the crime, it is up to

you to do the time!!!!"

120.   Defendant Gerstner's statements in a public forum demeaning Ms.

Herr and her family in the immediate wake of her death were known to officials in

Lebanon County, including Defendant Warden Karnes.

121.   Upon information and belief, Defendant Lebanon County's

correctional policymakers, Defendant Warden Karnes, undertook no efforts to

ensure that Defendant Gerstner and other correctional officers were aware of their

responsibilities to protect the health and safety of inmates, even those experiencing detoxification from controlled substances.

## B.    Defendants' Violations Of Ms. Herr's Constitutional And Legally Protected Rights

122.   The failure of defendants Yocum, McHale, Phipps, Medical John Does 1-10, Karnes, Gerstner, Gettle, Herr, Krall, Smith and Correctional Officer John Does 1-10 ("individual defendants") to ensure that Ms. Herr would be monitored, assessed and treated while going through dangerous heroin detoxification was due to the failure of defendant Lebanon County, with deliberate indifference, to establish appropriate policies, practices and procedures for the monitoring, assessment and treatment of inmates undergoing detoxification from heroin and other opiates after admission to LCCF.

123.   Additionally, the failure of the individual defendants to ensure that Ms. Herr would be monitored, assessed and treated while going through dangerous heroin detoxification was due to the failure of defendant Lebanon County to ensure through proper training, supervision and discipline that the individual defendants complied with established policies, practice and procedures for addressing the serious medical needs of inmates experiencing detoxification.

124.   Ms. Herr's death was the direct and proximate result of the actions and inactions of defendants Lebanon County and the individual defendants as described above.

125.   At all relevant times, all defendants were aware of Ms. Herr's serious medical needs and failed, with deliberate indifference and/or with gross and extraordinary negligence, to ensure that Ms. Herr received needed monitoring, assessment and treatment.

126.   At all relevant times, the conduct of all defendants was outrageous and extreme and undertaken intentionally or in deliberate disregard of Ms. Herr's emotional distress; as a direct and proximate result, she suffered severe emotional distress which manifested itself in physical symptoms.

127.   At all relevant times, defendants were aware of Ms. Herr's particular medical needs, were aware of the potential of the harm that could be caused as a result of her needs, and were in a position to protect Ms. Herr from suffering that harm, yet failed to do so.

128.   At relevant times, as exemplified by the facts outlined above, the conduct of all defendants was in willful, reckless, and callous disregard of Ms. Herr's rights under federal and state law.

129.   As a direct and proximate result of the conduct of all defendants, Ms. Herr experienced enormous physical and emotional pain and suffering.

130.   As a direct and proximate result of the conduct of all defendants, Ms. Herr was caused to lose her life and her enjoyment of her life, including the complete loss of earnings and earning capacity.

## V.  WRONGFUL DEATH AND SURVIVAL ACTIONS

131.   Plaintiff, as Administrator of the Estate of Victoria Herr, brings this action on behalf of Ms. Herr's heirs under the Pennsylvania Wrongful Death Act, 42 Pa. C.S. § 8301.

132.   Ms. Herr's heirs under the Wrongful Death Act are:

   a.  Her mother, Stephanie Moyer, the plaintiff in this action, and

   b.  Her father, Darryl Herr, 1 Lost Acre Lane, Newmanstown, PA 17073.

133.   Ms. Herr did not bring an action against defendants for damages for the injuries causing her death during her lifetime.

134.   Ms. Herr's heirs have, by reason of Ms. Herr's death, suffered pecuniary loss, and have or will incur expenses for the costs of Ms. Herr's funeral, the costs of Ms. Herr's headstone, and the costs of administering Ms. Herr's estate.

135.   Ms. Herr's heirs have, by reason of Ms. Herr's death, suffered further pecuniary loss including expected contributions and financial support from Ms. Herr for food, clothing, shelter, medical care, education, entertainment, recreation and gifts.

26

136.   Plaintiff also brings this action on behalf of the Estate of Victoria Herr under the Pennsylvania Survival Statute, 42 Pa. C.S. § 8302, under which all claims Ms. Herr would have able to bring had she survived, may be brought by Ms. Herr's estate.

137.   Ms. Herr's estate has, by reason of Ms. Herr's death, suffered pecuniary loss, and has or will incur expenses for the costs of Ms. Herr's funeral, the costs of Ms. Herr's headstone, and the costs of administering Ms. Herr's estate.

138.   As a direct and proximate result of the conduct of all defendants, Ms. Herr experienced extraordinary physical and emotional pain and suffering before her death, and, as a result of her death, suffered complete loss of earnings and earnings capacity.

139.   Plaintiff, via this survival action, seeks damages for these harms caused to Ms. Herr, including punitive damages for the outrageous, wanton, reckless, and callous conduct of defendants as set forth above.

## VI.  CLAIMS FOR RELIEF

### COUNT I
**Plaintiff v. Defendants Yocum, McHale, Phipps, Medical John Does 1-10, Karnes, Gerstner, Gettle, Herr, Krall, Smith and Correctional Officer John Does 1-10**
<u>**Federal Constitutional Claims**</u>

140.   Defendants Yocum, McHale, Phipps, Medical John Does 1-10, Karnes, Gerstner, Gettle, Herr, Krall, Smith and Correctional Officer John Does 1-

10 were deliberately indifferent to Ms. Herr's serious medical needs and thereby violated Ms. Herr's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or Ms. Herr's right to due process of law under the Fourteenth Amendment to the United States Constitution.

**COUNT II**
**Plaintiff v. Defendant Lebanon County**
**Federal Constitutional Claims**

141.   The violations of Ms. Herr's constitutional rights under the Eighth and/or Fourteenth Amendments to the United States Constitution, plaintiff's damages, and the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of defendant Lebanon County, which, with deliberate indifference, failed to establish policies, practices, and procedures to ensure that inmates at LCCF undergoing detoxification from heroin and other opiates receive appropriate monitoring, assessment and treatment.

142.   The violations of Ms. Herr's constitutional rights under the Eighth and/or Fourteenth Amendments to the United States Constitution, plaintiff's damages, and the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of defendant Lebanon County, which, with deliberate indifference, failed to ensure through proper training, supervision and discipline that the individual defendants complied with established policies, practice and procedures for addressing the serious medical needs of

28

inmates at LCCF, including inmates undergoing detoxification from heroin and other opiates.

## COUNT III
### Plaintiff v. Defendants Yocum, McHale, Phipps, Medical John Does 1-10
### State Law Negligence Claims

143.  Defendants Yocum, McHale, Phipps and Medical John Does 1-10 had a duty to comply with generally accepted medical standards of care in their medical treatment of Ms. Herr.

144.  Defendants Yocum, McHale, Phipps and Medical John Does 1-10 grossly and willfully violated their respective duties of care to Ms. Herr.

145.  The defendants' violation of their duty of care to Ms. Herr was a direct and proximate cause and a substantial factor in bringing about Ms. Herr's damages as outlined above, and, as a result, defendants are liable to plaintiff.

## COUNT IV
### Plaintiff v. Defendants Yocum, McHale, Phipps, Medical John Does 1-10,
### Karnes, Gerstner, Gettle, Herr, Krall, Smith and
### Correctional Officer John Does 1-10
### Intentional Infliction of Emotional Distress

146.  The conduct of the individual defendants as describe above was outrageous and extreme.  Defendants acted intentionally or in deliberate disregard of Ms. Herr's emotional distress and, as a direct and proximate result, she suffered severe emotional distress which manifested itself in physical symptoms.  As such,

the defendants' conduct constitutes the tort of intentional infliction of emotional

distress.

## COUNT V
## Plaintiff v. Defendants Yocum, McHale, Phipps, Medical John Does 1-10, Karnes, Gerstner, Gettle, Herr, Krall, Smith and Correctional Officer John Does 1-10
## <u>Violation of Common Law Duty to Protect</u>

147.   The individual defendants were aware of Ms. Herr's particular

medical needs, were aware of the potential of the harm that could be caused as a

result of her needs, and were in a position to protect Ms. Herr from suffering that

harm, yet failed to do so.  As such, the defendants' conduct constitutes the tort of

violation of the common law duty to protect.

## VI.  REQUESTED RELIEF

**Wherefore**, plaintiff respectfully requests:

A.   Compensatory damages as to all defendants;

B.   Punitive damages as to defendants Yocum, McHale, Phipps, Medical
     John Does 1-10, Karnes, Gerstner, Gettle, Herr, Krall, Smith and
     Correctional Officer John Does 1-10;

C.   Reasonable attorneys' fees and costs;

D.   Such other and further relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial.

/s/ Jonathan H. Feinberg
Jonathan H. Feinberg
jfeinberg@krlawphila.com

/s/ Susan M. Lin
Susan M. Lin
slin@krlawphila.com

KAIRYS, RUDOVSKY, MESSING & FEINBERG LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
215-925-4400
215-925-5365 (fax)


/s/ Nick Brustin
Nick Brustin (*Pro Hac Vice*)
nick@nsbcivilrights.com

/s/ Emma Freudenberger
Emma Freudenberger (*Pro Hac Vice*)
emma@nsbcivilrights.com

/s/ Alexandra Lampert
Alexandra Lampert (*Pro Hac Vice*)
alexandra@nsbcivilrights.com

NEUFELD, SCHECK & BRUSTIN
99 Hudson Street, 8th Floor
New York, NY 10013
212-965-9081
212-965-9084 (fax)

*Counsel for Plaintiff*