# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEPHANIE MOYER, as** | : | |
| **ADMINISTRATOR of the ESTATE OF** | : | |
| **VICTORIA JEANNETTE HERR,** | : | |
| | : | **No. 3:16-CV-01424** |
| **Plaintiff,** | : | |
| | : | **(KOSIK, J.)** |
| **v.** | : | **(MEHALCHICK, M.J.)** |
| | : | |
| **LEBANON COUNTY et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO LEBANON COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Jonathan H. Feinberg
Susan M. Lin
KAIRYS, RUDOVSKY, MESSING &
  FEINBERG LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
215-925-4400
215-925-5365 (fax)

Nick Brustin
Emma Freudenberger
Alexandra Lampert
NEUFELD, SCHECK & BRUSTIN
99 Hudson Street, 8th Floor
New York, NY 10013
212-965-9081
212-965-9084 (fax)

*Counsel for Plaintiff*

October 7, 2016

# **TABLE OF CONTENTS**

I.     INTRODUCTION.................................................................................1

II.    COUNTER STATEMENT OF THE FACTS.................................................3

III.   COUNTER-STATEMENT OF ISSUES PRESENTED................................9

IV.   STANDARD OF REVIEW ........................................................................10

V.    ARGUMENT ..............................................................................................11

       A.    The Facts Pled In The Complaint Demonstrate That Warden
               Karnes Was Aware Of Ms. Herr's Serious Medical Needs And
               Ignored Those Needs. ........................................................................11

       B.    Officers Gerstner, Gettle, Herr, Krall, And Smith Were Aware
               Of Serious Risks To Ms. Herr's Health And Failed To Ensure
               Adequate Medical Attention. ...............................................................14

       C.    The Complaint Pleads Sufficient Facts To Support A Claim For
               Intentional Infliction Of Emotional Distress.......................................17

       D.    The Allegations In The Complaint Preclude State-Law
               Immunity Defenses To Negligence Claims Against The
               Medical Defendants. ...........................................................................18

       E.    Ms. Moyer May Pursue A Violation Of The Common Law
               Duty To Protect Claim, Which Is Not Precluded By State-Law
               Immunities. .........................................................................................19

       F.    Ms. Moyer May Seek Punitive Damages Against The
               Individual Defendants In Connection With Her Federal
               Constitutional Claims. .........................................................................21

VI.   CONCLUSION ...........................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alexander v. Riga*, 208 F.3d 419 (3d Cir. 1999) .....................................................20

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)...........................................................10

*Brown v. Thomas*, 172 F. App'x 446 (3d Cir. 2006)..............................................12

*Castro v. Cty. of Los Angeles*, -- F.3d --, 2016 WL 4268955 (9th Cir. Aug. 15, 2016)...........................................................................................................12

*Chimenti v. Pa. Dept. of Corrs.*, No. 15-cv-3333, 2016 WL 1125580 (E.D. Pa. March 21, 2016) ................................................................................................12

*Coward v. Lanigan*, No. 13-cv-2222, 2016 WL 1229074 (D.N.J. Mar. 29, 2016).11

*Estelle v. Gamble*, 429 U.S. 97 (1976) ...................................................................12

*Farmer v. Brennan*, 511 U.S. 825 (1994)...............................................................12

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ..............................10, 11

*Hayes v. Erie Cty. Ofc. of Children and Youth*, 497 F. Supp. 2d 684 (W.D. Pa. 2007).........................................................................................................18

*Heisel v. Complete Care Servs., L.P.*, 797 A.2d 1051 (Pa. Commw. Ct. 2002) .....18

*Keahey v. Bethel Township*, 2012 WL 478936 (E.D. Pa. Feb. 15, 2012) ...............11

*Kenney v. Montgomery County*, No. 13-cv-2590, 2013 WL 5356862 (E.D. Pa. Sept. 25, 2013)........................................................................................21

*Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015) ..................................................12

*Kuzel v. Krause*, 658 A.2d 856 (Pa. Commw. Ct. 1995)........................................18

*McKissick v. Cty. of York*, No. 1:09-CV-1840, 2011 WL 5117621 (M.D. Pa. Oct. 25, 2011) ........................................................................................................16

*Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575 (3d Cir. 2003) ......................13

*Njos v. United States*, No. 3:14-cv-1960, 2015 WL 5695658 (M.D. Pa. Sept. 24, 2015) ...............................................................................................................15

*Otero v. Etter*, No. 08-cv-282, 2011 WL 3806284 (W.D. Pa. Aug. 26, 2011) .......16

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ...............................11

*Preyor v. City of Ferndale*, 248 F. App'x 636 (6th Cir. 2007) ...............................13

*Rankin v. SEPTA*, 606 A.2d 536 (Pa. Commw. Ct. 1992) ......................................19

*Small v. Gillis*, No. 05-3837, 2006 WL 1737501 (E.D. Pa. June 22, 2006)...........13

*Smith v. Wade*, 461 U.S. 30 (1983) ........................................................................20

*Thomas v. City of Philadelphia*, 574 A.2d 1205, 1206 (Pa. Commw. Ct.) .............19

*White v. Brommer*, 747 F. Supp. 2d 447 (E.D. Pa. 2010) ......................................10

*Woloszyn v. County of Lawrence*, 396 F.3d 314 (3d Cir. 2005).............................12

**Statutes**

42 Pa. C.S. § 8545 ..................................................................................................17

42 Pa. C.S. § 8550 .............................................................................................17, 18

42 U.S.C. § 1983 .......................................................................................................2

Fed. R. Civ. P. 12(b)(6) ...........................................................................................10

## I.      INTRODUCTION

Victoria Jeannette Herr ("Ms. Herr") was admitted to the Lebanon County Correctional Facility ("LCCF") on March 27, 2015.  At that time, moving defendants, correctional and medical staff members at LCCF, were aware of their responsibility to ensure that inmates received adequate medical care.  They were specifically aware that many inmates at LCCF were, in line with well-known national trends, addicted to heroin and other opiate-based substances.  Consistent with that awareness, the defendants knew heroin-addicted inmates would go through detoxification upon admission.  They knew, further, that heroin detox could lead to dangerous consequences, which, in turn, could be fatal.  And, they knew that to prevent these consequences, consistent monitoring, evaluation, and treatment was required.

When Ms. Herr entered LCCF, she told correctional and medical staff that she had been abusing heroin and expected to detox.  Over the next four days, Ms. Herr showed alarming signs that her detox was causing serious consequences.  She had constant diarrhea and vomiting and was unable to eat or retain fluids.  She was disoriented and in an altered state of consciousness.  The defendants were aware of these conditions, but took no action to provide Ms. Herr with treatment.

On the evening of March 31, Ms. Herr was weak from dehydration and could not stand or walk.  It was an obvious medical emergency.  Yet, defendants

continued in their failure to treat her.  Ms. Herr was taken to the medical unit

where she was given only a nutritional supplement and a cup of water.  She was

returned to her housing area, where she collapsed, lost consciousness, and went

into cardiac arrest. Finally, emergency services were called, and paramedics

transported her to a hospital. Her condition, however, was irreversible, and she

never regained consciousness. Five days later, on April 5, 2015, she died. She was

18 years old.

Plaintiff Stephanie Moyer ("Ms. Moyer"), the mother of Ms. Herr and the

Administrator of her Estate, has brought this civil rights survival and wrongful

death action under 42 U.S.C. § 1983 alleging in Count I that correctional and

medical staff were deliberately indifferent to Ms. Herr's serious medical needs in

violation of the Fourteenth Amendment.  Ms. Moyer also claims in Count II that

Defendant Lebanon County caused these constitutional violations, and she brings

three state-law claims: negligence against the medical defendants (Count III), and

intentional infliction of emotional distress (Count IV) and violation of the common

law duty to protect (Count V) against all individual defendants.

The instant motion is brought by nine defendants: Lebanon County; A.

McHale, LPN; Heather Phipps, LPN; Warden Robert Karnes; and Correctional

Officers Michael Gerstner, Cheyenne Gettle, Crystal Herr, Bradley Krall, and

Sarah Smith (collectively, "County defendants").[1]  The County defendants assert

six arguments in support of their motion.[2]  As demonstrated below, the County

defendants' arguments are based on misstatements of the law and the Complaint's

allegations.  The motion should be denied, and Ms. Moyer should be permitted to

proceed with all of her claims.

## II.   COUNTER STATEMENT OF THE FACTS

The facts relevant to the instant motion as pled in Ms. Moyer's Complaint,

drawing all inferences in the light most favorable to Ms. Moyer as the non-moving

party, are as follows: Defendant Lebanon County, as operator of LCCF; the

correctional defendants, Warden Karnes and Correctional Officers Gerstner,

Gettle, Herr, Krall, and Smith, as employees of LCCF; and the medical defendants,

Nurses McHale and Phipps, as contractors or employees of LCCF, were, in their

respective roles, as of March 2015, aware of increased patterns of heroin and

opiate use among young persons admitted to LCCF.  Complaint, ECF 1, at ¶¶ 8,

10-11, 13-18, 22-23.  They were, likewise, aware that detoxification from heroin

and other opiates can result in harmful and potentially fatal medical consequences

---

[1] Defendant Jeffrey Yocum, D.O., has filed a separate motion to dismiss (ECF 18, 19).  Ms. Moyer's brief in opposition to that motion will be filed simultaneously to this submission.

[2] Nurses McHale and Phipps do not challenge the federal constitutional claims in Count I, nor does Defendant Lebanon County challenge the municipal liability claim in Count II.  Thus, if the Court were to dismiss any claims—as shown below, it should not—these claims would remain.

and that, accordingly, detoxing inmates have serious medical needs.  *Id.* at ¶¶ 28-30.

In view of these risks, basic standards of correctional practice known to the defendants required consistent monitoring of opiate-addicted persons admitted to LCCF.  *Id.* at ¶¶ 31, 38.  Necessary monitoring includes assessments, multiple times per day, of the detoxing person's vital signs and evaluation for serious health consequences of detox such as vomiting, diarrhea, and anxiety.  *Id.* at ¶¶ 32-33.  Correctional officers, like medical staff, have a duty to ensure protection of inmates in their custody, and were aware of the need for monitoring detoxing inmates.  *Id.* at ¶¶ 35-38.

On March 27, 2015, when Ms. Herr was admitted to LCCF on drug charges, she made clear to medical and correctional staff that she was addicted to heroin.  *Id.* at ¶¶ 49-51.  Officer Gerstner documented that Ms. Herr was likely to go through detox and should be placed on thirty-minute "checks" for withdrawal.  *Id.* at ¶¶ 51-52.  An initial medical evaluation on the morning of March 28, provided further confirmation, as Ms. Herr reported that she had been injecting at least 10 bags of heroin every day and she was starting to withdraw.  *Id.* at ¶¶ 53-54.

Despite that information, no examination took place, nor was there any assessment of her vital signs.  *Id.* at ¶¶ 56-60.  This lack of medical attention continued with devastating consequences for Ms. Herr; over the four days

4

following the March 28 medical encounter, Ms. Herr's unmonitored detox caused a rapid and severe decline in her health.  *Id.* at ¶ 62.  She had repeated bouts of vomiting and constant diarrhea, which was so extreme that inmates on a work detail were frequently summoned to clean Ms. Herr's soiled cell.  *Id.* at ¶¶ 63-64. Eventually, correctional staff forced Ms. Herr to wear adult diapers.  *Id.* at ¶ 65. She did not eat and ingested only limited fluids.  *Id.* at ¶ 66.  She was delirious and detached from reality to the point that she experienced hallucinations which she described to other inmates as if they were real.  *Id.* at ¶ 68.  She was extremely weak with signs of altered consciousness; she appeared dazed and disoriented and could not stand, walk or sit up unassisted.  *Id.* at ¶¶ 67-68.

Ms. Herr's symptoms made it obvious to anyone, including fellow inmates, that she had serious and urgent medical needs.  *Id.* at ¶ 70.  Those inmates urged correctional and medical staff to treat Ms. Herr.  *Id.*  Based on these reports and their personal observations, each of the correctional defendants—Warden Karnes and Officers Gerstner, Gettle, Herr, Krall, and Smith—knew that Ms. Herr had serious medical needs.  *Id.* at ¶¶ 71-72.  Despite this knowledge, and despite their knowledge of a risk of severe health consequences given the lack of adequate medical attention, the defendants failed to ensure that Ms. Herr would receive such attention.  *Id.* at ¶ 73. Instead of treating or monitoring Ms. Herr, correctional staff simply required other inmates to clean the vomit and diarrhea from her cell and

then forced Ms. Herr to wear adult diapers, all while she continued to deteriorate. *Id.* at ¶ 64-69.[3]

On the evening of March 31, Ms. Herr was barely conscious. *Id.* at ¶ 82. Two correctional defendants, Officers Gettle and Smith, finally went to Ms. Herr's cell to take her to the medical unit. *Id.* at ¶ 83.  They ordered Ms. Herr to exit her cell, but she could not walk and fell to the floor. *Id.* at ¶ 84.  The officers roughly picked her up and escorted her to the medical unit. *Id.* at ¶ 85.  While doing so, they yelled at her, ordering her to walk faster and accusing her of faking her condition. *Id.* at ¶ 86.   When they arrived at the medical unit, Officer Krall was present, and he too yelled at Ms. Herr, accusing her of faking. *Id.* at ¶ 87. Given their knowledge of the prolonged severity of Ms. Herr's illness, defendants obviously knew she was not faking. *Id.* at ¶ 71.

At the medical unit, Ms. Herr was seen by Nurses McHale and Phipps. *Id.* at ¶ 88.  Both nurses knew from Ms. Herr's obvious signs of severe dehydration and reports of vomiting and diarrhea that she was experiencing a life-threatening medical emergency. *Id.* at ¶ 88.  Despite this emergency, neither Nurse McHale nor Nurse Phipps conducted an examination of Ms. Herr, nor did they provide her with treatment. *Id.* at ¶ 89.  Instead, they gave her Ensure (a nutritional

---

[3] During this time period, correctional staff made efforts to cover up Ms. Herr's illness and that she was not receiving treatment. *See* Complaint at ¶¶ 77-80 (detailing correctional officer's false statement to Ms. Moyer and her husband that Ms. Herr was "fine").

supplement) and a cup of water—knowing that, given her life threatening condition, these measures were inadequate to address Ms. Herr's serious medical needs. *Id.* at ¶¶ 92-93.

Officers Gettle and Smith returned Ms. Herr to her housing area. *Id.* at ¶ 94. Upon arrival in her cell, Ms. Herr fell to the floor and began vomiting large quantities of liquid. *Id.* at ¶ 95. She emitted a gasping sound, stopped breathing and had no pulse. *Id.* Correctional staff, including Officers Gettle, Herr, and Krall observed Ms. Herr to fall to the ground and knew she was experiencing a life-threatening medical emergency requiring immediate life-saving measures. *Id.* at ¶ 96. Still, the officers failed to act. *Id.* at ¶ 97. While they stood and watched Ms. Herr on the floor, not breathing and with no heartbeat, inmates in the housing area yelled that they could conduct CPR. *Id.* at ¶ 98. The officers, however, refused to allow these inmates to approach Ms. Herr. *Id.*

After several critical minutes during which Ms. Herr remained without a pulse and without respirations, medical staff were summoned to the housing area and an ambulance was called. *Id.* at ¶¶ 99-100. Paramedics transported Ms. Herr to a hospital. *Id.* at ¶¶ 100-01. Following extensive efforts at resuscitation, Ms. Herr's heart rhythm and respirations were revived, but, because she had been without oxygen for a prolonged period, her brain was severely damaged, and she did not regain consciousness. *Id.* at ¶¶ 101-02. After transfer to a trauma center,

Ms. Herr was placed on a ventilator; treatment in intensive care did not improve her condition, and, five days after her hospitalization, she died. *Id*. at ¶¶ 108-09.

Thereafter, correctional and medical staff at LCCF attempted to cover up the wrongdoing that led to Ms. Herr's death. Warden Karnes falsely told Ms. Moyer that protocols had been followed in the treatment of Ms. Herr. *Id*. at ¶ 112. Nurse Phipps placed a "late entry" in Ms. Herr's medical chart falsely stating that moments before she collapsed and lost consciousness Ms. Herr was coherent and able to communicate. *Id*. at ¶ 113. And, despite requirements that correctional and medical staff conduct a mortality review, LCCF staff, with Warden Karnes' approval, chose not to conduct any review. *Id*. at ¶ 117.

Officer Gerstner's actions following Ms. Herr's death exceeded a cover up; he made public statements demeaning and blaming Ms. Herr. Posting comments in a social media group commemorating Ms. Herr's life, he wrote: "I find this so funny that people want the tax payers to pay for people going through withdraw in prisons…So, I say let them do there [sic] 'hard' withdraw and spend the money on someone that is gonna appreciate it!!!! You do the crime, it is up to you to do the time!!!!" *Id*. at ¶ 119.

## III.   COUNTER-STATEMENT OF ISSUES PRESENTED

A.      Whether the facts pled in the Complaint demonstrate that Warden Karnes had knowledge of Ms. Herr's serious medical needs—evidenced by four days of vomiting, diarrhea, deliriousness, incoherence, and the inability to sit, stand or walk—and was deliberately indifferent to those needs.

Suggested Answer: Yes.

B.      Whether the facts pled in the Complaint demonstrate that Officers Gerstner, Gettle, Herr, Krall and Smith were aware of Ms. Herr's serious medical needs— evidenced by four days of vomiting, diarrhea, deliriousness, incoherence, and the inability to sit, stand or walk, and, eventually, her collapse due to cardiac arrest—and were deliberately indifferent to those needs.

Suggested Answer: Yes.

C.      Whether the facts pled in the Complaint showing, among other things, the defendants' indifference to Ms. Herr's symptoms of a life threatening emergency and accusations that Ms. Herr was faking her condition support a claim for intentional infliction of emotional distress.

Suggested Answer: Yes.

D.      Whether Ms. Moyer may pursue claims for negligence against medical defendants in light of her pleading that those defendants acted as

independent contractors and/or with willful misconduct such that immunities do
not apply.

       Suggested Answer: Yes.

       E.      Whether established Pennsylvania law supports Ms. Moyer's claim
for violation of the common law duty to protect and whether the facts pled in the
Complaint demonstrate willful misconduct so as to preclude immunity.

       Suggested Answer: Yes.

       F.      Whether the facts pled in the Complaint demonstrate defendants'
reckless indifference to Ms. Herr's federally protected rights so as to support a
claim for punitive damages.

       Suggested Answer: Yes.

## IV.   STANDARD OF REVIEW

       Following the Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S. Ct.
1937 (2009), when the Court considers a motion to dismiss pursuant to Fed. R.
Civ. P. 12(b)(6), it conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578
F.3d 203, 210-11 (3d Cir. 2009).  First, the Court "must accept all of the
complaint's well-pleaded facts as true."  *Id.* at 210.  Second, the Court "must then
determine whether the facts alleged in the complaint are sufficient to show that the
plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at
1950).  The "plausibility" analysis "will be 'a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.'" *Id.*

(quoting *Iqbal*, 129 S. Ct. at 1949).  In sum, the plausibility inquiry is not an

exacting one.  *See White v. Brommer*, 747 F. Supp. 2d 447, 457 (E.D. Pa. 2010)

(citing *Fowler*, 578 F.3d at 210; *Phillips v. County of Allegheny*, 515 F.3d 224, 233

(3d Cir. 2008)) (stating that Court must determine "whether, under any reasonable

reading, the plaintiff may be entitled to relief" and noting that "a complaint may

not be dismissed merely because it appears unlikely that the plaintiff can prove

those facts or will ultimately prevail on the merits"); *see also Keahey v. Bethel

Township*, No. 11-cv-7210, 2012 WL 478936, at *3 (E.D. Pa. Feb. 15, 2012)

(following *Iqbal* the Federal Rules of Civil Procedure still "require[] only a short

and plain statement of the claim showing that the pleader is entitled to relief and

need not contain detailed factual allegations").

## V.   ARGUMENT

### A.   The Facts Pled In The Complaint Demonstrate That Warden Karnes Was Aware Of Ms. Herr's Serious Medical Needs And Ignored Those Needs.

Ms. Moyer's federal constitutional claim alleging that the County defendants

violated Ms. Herr's right to adequate medical care while she was a pretrial detainee

arises under the Fourteenth Amendment and, under existing Third Circuit law,

embodies Eighth Amendment standards.[4]  Following established Supreme Court

precedent, a plaintiff establishes a § 1983 claim for unconstitutional denial of

medical care in the prison context if the record shows that (1) the plaintiff had a

serious medical need and (2) the defendants were deliberately indifferent to that

serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Such claims

are not limited to medical professionals, as correctional officials are equally

responsible for ensuring that inmates are not deprived of adequate medical care.

*Id.* at 104-05.  A correctional official acts "with deliberate indifference to a serious

medical need 'when he knows of and disregards an excessive risk to inmate health

or safety.'"  *Chimenti v. Pa. Dept. of Corrs.*, No. 15-cv-3333, 2016 WL 1125580,

at *5 (E.D. Pa. March 21, 2016) (quoting *Brown v. Thomas*, 172 F. App'x 446, 450

(3d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

---

[4] The case law cited in this section follows the Third Circuit's binding precedent that claims of unconstitutional deprivation of adequate medical care are judged by the same standards whether brought by pretrial detainees or sentenced defendants. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003); *Coward v. Lanigan*, No. 13-cv-2222, 2016 WL 1229074, at *4 n.3 (D.N.J. Mar. 29, 2016).  Ms. Moyer, however, expressly preserves the claim that, as a pretrial detainee, claims concerning deliberate indifference to Ms. Herr's serious medical needs should be judged by an objective reasonableness standard.  *See Castro v. Cty. of Los Angeles*, -- F.3d --, 2016 WL 4268955, at *7-8 (9th Cir. Aug. 15, 2016) (en banc) (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)) (pretrial detainee's failure-to-protect claim required showing that defendant "did not take reasonable available measures to abate…risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved").  Ms. Moyer's claims satisfy either standard.

Because a defendant's state of mind can be proved by circumstantial evidence, a plaintiff has no burden to show that the defendant admitted his or her consciousness of the risk of serious harm. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 321 (3d Cir. 2005) (citation omitted).  Deliberate indifference "can be found where prison officials 'ignored that evidence' of a serious need for medical care." *Small v. Gillis*, No. 05-3837, 2006 WL 1737501, at *3 (E.D. Pa. June 22, 2006) (citing *Natale*, 318 F.3d at 582).  Given the obvious consequences of heroin detox, officers who are aware of and deliberately ignore risks of those consequences are deliberately indifferent. *See Preyor v. City of Ferndale*, 248 F. App'x 636, 644 (6th Cir. 2007) (affirming denial of summary judgment for police officers who observed decedent arrestee undergoing heroin detoxification and failed to respond causing death).

The County defendants argue that the Complaint's allegations concerning Warden Karnes do not show actual knowledge of Ms. Herr's serious medical needs and contend that Ms. Moyer is only alleging supervisory liability.  But this is belied by a plain reading of Ms. Moyer's allegations, which state that Warden Karnes "was aware of Mr. Herr's serious medical needs and the fact that correctional and medical staff did not address those serious medical needs." Complaint at ¶ 72.  Given the prolonged severity of Ms. Herr's condition, there is little question that Warden Karnes would have learned of a very sick inmate at

LCCF, and the allegation as to his knowledge is more than plausible at this stage of the case.  Further, if there were any question as to the plausibility of the allegations—there is not—it is answered by the fact that, following Ms. Herr's death, Warden Karnes acted in at least two respects to cover up defendants' misconduct: by not conducting a mortality review (a required procedure following inmate deaths) and by stating that LCCF staff followed all protocols (when they had not).  These actions reasonably support the inference that Warden Karnes sought to cover up his own misconduct—that is, his failure to ensure Ms. Herr received adequate medical care. Ms. Moyer's constitutional claim against Warden Karnes should proceed.

### B. Officers Gerstner, Gettle, Herr, Krall, And Smith Were Aware Of Serious Risks To Ms. Herr's Health And Failed To Ensure Adequate Medical Attention.

Mirroring their argument concerning Warden Karnes, the County defendants' argument concerning the remaining correctional officers ignores the pleading in the Complaint.[5]  Thus, the County defendants assert that, prior to March 31, there are no facts alleged that the officers "were aware of any health condition other than normal symptoms of drug withdrawal."  County Br. at 8.  This

---

[5] The County defendants advance separate arguments for Officer Gerstner, contending that his only knowledge of Ms. Herr arose out of his March 27 encounter.  County Br. at 6-8.  This ignores the pleading that Officer Gerstner was aware of Ms. Herr's serious illness throughout the four days of her incarceration leading up to her collapse and cardiac arrest on March 31.  Complaint at ¶ 71.

is false.  The Complaint, after detailing Ms. Herr's "rapid and severe decline" over four days, Complaint at ¶¶ 62-69, states that the officers were "all aware of Ms. Herr's serious medical needs evidenced by her vomiting, diarrhea, altered consciousness, weakness, and inability to eat or drink."  Complaint at ¶ 71. Indeed, they had to have been aware: they made other inmates clean diarrhea and vomit from Ms. Herr's cell and required her to wear adult diapers.  *Id.* at ¶¶ 64-70. The symptoms known to the officers hardly constituted "normal" detox ; to the contrary, as they knew, these symptoms were evidence of a serious and deadly illness.  *Id.* at ¶¶ 28, 30, 38, 78.

The fact that Officers Gettle, Herr, Krall and Smith interacted with Ms. Herr before and after she was taken to the medical unit for "treatment" on March 31, does not absolve them.  The County defendants concede the sufficiency of the allegations that Nurses McHale and Phipps were deliberately indifferent in failing to seek immediate treatment for Ms. Herr on March 31.[6]  Nothing in law or logic

---

[6] This fact distinguishes this case from *Njos v. United States*, No. 3:14-cv-1960, 2015 WL 5695658 (M.D. Pa. Sept. 24, 2015).  There, the court noted that "*absent some reason to believe that prison medical staff are mistreating prisoners*, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims." *Id.* at *9 (emphasis added).  In this case, of course, for most of Ms. Herr's days of rapid and serious deterioration correctional staff knew that Ms. Herr needed treatment but neither they nor medical staff provided it.  When Ms. Herr was finally brought to the medical unit the correctional defendants knew that medical staff continued in their failure to provide adequate treatment by giving her a

15

would allow correctional officers to defend against allegations they ignored a medical emergency obvious to everyone who saw Ms. Herr, *see* Complaint at ¶ 70, simply because medical professionals were also deliberately indifferent.

Two other reasons support Ms. Moyer's deliberate indifference claims against the officers.  First, Officers Gettle, Krall and Smith harshly accused Ms. Herr, whom they knew to be suffering from a severe medical condition, of faking her illness, *id.* at ¶¶ 86-87—facts that evince shocking disregard for Ms. Herr's wellbeing.  *See McKissick v. Cty. of York*, No. 1:09-CV-1840, 2011 WL 5117621, at *14 (M.D. Pa. Oct. 25, 2011) (nurse's testimony that decedent "may simply have been faking his inability to breathe in order to obtain medication from her" despite "objective indicators suggest[ing] his condition was becoming increasingly dire" evidence of deliberate indifference).  Second, when Ms. Herr collapsed to the floor without a pulse and respirations, Officers Gettle, Herr, and Krall delayed lifesaving measures, extending the time Ms. Herr was without oxygen for several critical minutes.  *Id.* at ¶¶ 96-99.  The failure to act in such an obvious emergency constitutes deliberate indifference.  The officers' request to dismiss Ms. Moyer's claims should, therefore, be denied.

---

nutritional supplement when she was unable to to eat or hold down any fluids.  The serious risk of harm to Ms. Herr thus remained obvious to these defendants.

**C.     The Complaint Pleads Sufficient Facts To Support A Claim For Intentional Infliction Of Emotional Distress.**

The County defendants argue that Ms. Moyer has not alleged facts demonstrating they acted with "extreme, conscience-shocking" behavior, which, they contend, is a prerequisite for an intentional infliction of emotional distress ("IIED") claim.  First, defendants overstate the misconduct that must be shown to support a claim, as courts have, in cases involving straightforward deliberate indifference, allowed such claims to proceed.  *See*, *e.g.*, *Otero v. Etter*, No. 08-cv-282, 2011 WL 3806284, at *1, *4 (W.D. Pa. Aug. 26, 2011) (Eighth Amendment deliberate indifference and IIED claims supported by allegations defendant recklessly drove prison van).

More fundamentally, the Complaint pleads a comprehensive account of conduct a finder of fact may deem "outrageous," including:

- Ignoring the urging of inmates to provide Ms. Herr with emergency medical care, Complaint at ¶ 70;

- Deliberately and falsely informing Ms. Moyer and her husband that Ms. Herr was "fine," *id.* at ¶ 80;

- Harshly accusing Ms. Herr of faking her condition when she was barely conscious and near death, *id.* at ¶¶ 85-87;

- Failing to provide immediate life-saving measures when Ms. Herr collapsed thereby delaying emergency treatment, *id.* at ¶¶ 96-99; and

17

- After Ms. Herr's death, falsifying medical records, covering up LCCF staff misconduct, and publicly demeaning and blaming Ms. Herr, *id.* at ¶¶ 110-21.

These allegations are sufficient to allow the IIED claim to proceed.

### D. The Allegations In The Complaint Preclude State-Law Immunity Defenses To Negligence Claims Against The Medical Defendants.

The County defendants are correct that immunities available under 42 Pa. C.S. §§ 8545, 8550 constitute a defense for Nurse McHale and Nurse Phipps to the extent (1) they were acting as employees and (2) were merely negligent.  But, as alleged in the Complaint, neither condition is met.

First, the Complaint alleges that each nurse was "working as an independent contractor and/or an employee."  Complaint at ¶¶ 10-11.  To the extent the nurses were independent contractors, they were not "[a]n employee of a local agency," under § 8545, and, therefore, have no immunity.  *Heisel v. Complete Care Servs., L.P.*, 797 A.2d 1051, 1057 (Pa. Commw. Ct. 2002).  Because the Court must accept Ms. Moyer's allegations regarding independent contractors, there is no basis for dismissal on immunity grounds.[7]

---

[7] The assertion that the nurses were independent contractors meets the plausibility test.  The Complaint pleads that Dr. Yocum was, likewise, acting as an independent contractor, Complaint at ¶ 9, and, notably, Dr. Yocum has not asserted any claim that his employment status renders him immune.

Even if the Court were to find that the nurses could claim immunity, that defense is not absolute, as it does not cover "willful misconduct." *See Hayes v. Erie Cty. Ofc. of Children and Youth*, 497 F. Supp. 2d 684, 704-08 (W.D. Pa. 2007) (discussing exceptions to immunity defense in 42 Pa. C.S. § 8550); *see also* Complaint at ¶ 128 (pleading defendants' conduct was "willful").  A plaintiff demonstrates "willful misconduct" by showing the defendant "knew or should have known" her actions were improper.  *Kuzel v. Krause*, 658 A.2d 856, 860 (Pa. Commw. Ct. 1995).  This standard does not require a plaintiff to prove that the defendant specifically intended to cause the resulting injury.  *Id.* at 859 n.6.

The conduct of Nurses McHale and Phipps meets this standard.  Both knew Ms. Herr was ill with a life threatening illness but, despite understanding the risk, gave her "treatment" not at all responsive to her needs.  Complaint at ¶ 93. Further, after Ms. Herr died, Nurse Phipps placed a false note in medical records claiming that Ms. Herr had no significant illness on March 31—an effort to cover up the inadequate treatment provided.  *Id.* at ¶¶ 113-14. On these facts, there is no immunity.

**E.    Ms. Moyer May Pursue A Violation Of The Common Law Duty To Protect Claim, Which Is Not Precluded By State-Law Immunities.**

The County defendants claim that there is no claim under Pennsylvania law for a violation of the duty to protect.  They are incorrect.  Ms. Moyer's claim is

brought pursuant to Pennsylvania cases acknowledging that while tort law does not generally impose a duty to protect , there is an exception when the defendant has a "special relationship" with the plaintiff.  In the lead case, *Rankin v. SEPTA*, 606 A.2d 536 (Pa. Commw. Ct. 1992), the court explained that liability is established upon proof the defendant: (1) was aware of the plaintiff's "particular situation or unique status"; (2) "had knowledge of the potential of the particular harm" the plaintiff suffered; and (3) assumed to protect the plaintiff from the harm occasioned.  *Id.* at 538 (quoting *Thomas v. City of Philadelphia*, 574 A.2d 1205, 1206 (Pa. Commw. Ct.), *pet. for all. of app. denied,* 593 A.2d 429 (1990)).  The facts outlined above satisfy these three elements: the defendants knew of Ms. Herr's serious needs, they knew she was at risk for harmful consequences without medical intervention, and, by virtue of their role as custodians, assumed the responsibility for protecting Ms. Herr.

Just as with Ms. Moyer's negligence claims discussed above, the County defendants' contention that the duty to protect claim is barred by immunity is precluded by Ms. Moyer's allegations of willful misconduct.  As discussed, the defendants' conduct deliberately ignoring a serious risk to Ms. Herr demonstrates willful misconduct, and, accordingly, no immunity defense bars this claim.

**F.**    **Ms. Moyer May Seek Punitive Damages Against The Individual Defendants In Connection With Her Federal Constitutional Claims.**

The County defendants only contest Ms. Moyer's claim for punitive damages to the extent they are sought against Lebanon County or on state claims. As clarification, Ms. Moyer seeks punitive damages with respect to the federal constitutional claims in Count I.  The facts in the Complaint support this request. "A jury may 'assess punitive damages in a civil rights action when the defendant's conduct…involves reckless or callous indifference to the federally protected rights of others.'"  *Alexander v. Riga*, 208 F.3d 419, 430-31 (3d Cir. 1999) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  The "reckless indifference" prerequisite to an award of punitive damages refers to the defendants' knowledge they "may be acting in violation of federal law." *Id.* at 431 (citation omitted).  Because Ms. Moyer has pled claims of deliberate indifference against the individual defendants, a concept equivalent to recklessly disregarding a risk, at this stage, the claim for punitive damages may proceed.  *Kenney v. Montgomery County*, No. 13-cv-2590, 2013 WL 5356862, at *9 (E.D. Pa. Sept. 25, 2013).

21

## VI.   CONCLUSION

For the foregoing reasons, the County defendants' motion to dismiss should

be denied.

Respectfully submitted,


/s/ Jonathan H. Feinberg
Jonathan H. Feinberg
Susan M. Lin
KAIRYS, RUDOVSKY, MESSING &
  FEINBERG LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
215-925-4400
215-925-5365 (fax)

Nick Brustin
Emma Freudenberger
Alexandra Lampert
NEUFELD, SCHECK & BRUSTIN
99 Hudson Street, 8th Floor
New York, NY 10013
212-965-9081
212-965-9084 (fax)

*Counsel for Plaintiff*

## <u>CERTIFICATE OF WORD COUNT</u>

I, Jonathan H. Feinberg, hereby certify that the foregoing Brief complies

with Local Civ. R. 7.8(b)(2) in that it consists of 4,998 words.

<u>/s/ Jonathan H. Feinberg  </u>
Jonathan H. Feinberg

<u>**CERTIFICATE OF SERVICE**</u>

I, Jonathan H. Feinberg, hereby certify that the foregoing Brief in

Opposition to Lebanon County Defendants' Motion to Dismiss was, on October 7,

2016, filed via the Court's CM/ECF system and, therefore, served on the

following:

> Andrew H. Foulkrod, Esq.
> Eric Lauerman, Esq.
> Cipriani & Werner, P.C.
> 1011 Mumma Road, Suite 201
> Lemoyne, PA 17043-1145
>
> *Counsel for Defendant Dr. Jeffrey Yocum*
>
> David L. Schwalm, Esq.
> Matthew R. Clayberger, Esq.
> Thomas, Thomas & Hafer, LLP
> 305 North Front Street, 6th Floor
> POB 999
> Harrisburg, PA 17108-0999
>
> *Counsel for Lebanon County Defendants*

> /s/ Jonathan H. Feinberg
> Jonathan H. Feinberg